UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES BOLAND, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 12-1044 (RBW) |
| YOCCABEL CONSTRUCTION COMPANY, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

The plaintiffs,[1] in their capacity as fiduciaries and board members of both the Bricklayers and Trowel Trades International Pension Fund (the "International Pension Fund") and the Bricklayers and Allied Craftworkers International Health Fund (the "International Health Fund"), have filed a motion seeking entry of a default judgment against and attorneys' fees from the defendant Yoccabel Construction Company, Inc. ("Yoccabel"). See Motion for Entry of

---

[1] The plaintiffs are two retirement funds and their respective fiduciaries and board members. James Boland, Henry Kramer, Ken Lambert, Gerard Scarano, Timothy Driscoll, John J. Flynn, Gerald O'Malley, Eugene George, Robert Hoover, Matthew Aquiline, Gregory Hess, William McConnell, Charles Costella, John Trendell, and Fred Kinateder sue as trustees of and on behalf of the Bricklayers and Trowel Trades International Pension Fund. Complaint ("Compl.") ¶ 3. Messrs. Boland, Flynn, Lambert, Scarano, Kramer, Driscoll, George, Aquiline, Kinateder, Hess, and Hoover sue as trustees of and on behalf of the Bricklayers and Allied Craftworkers International Health Fund. Id. ¶ 4. Both Funds are employee benefit plans within the meaning of 29 U.S.C. § 1002(3) (2006), and multiemployer plans within the meaning of 29 U.S.C. § 1002(37)(A), established and maintained pursuant to collective bargaining agreements between affiliates of the International Union of Bricklayers and Allied Craftworkers and various employers, including the defendant, to provide health and pension benefits to their beneficiaries. See id. ¶¶ 3–7.

1

Default Judgment and Incorporated Memorandum in Support Thereof ("Pls.' Mot.") at 1. For the reasons set forth below, the Court finds that the plaintiffs' motion must be granted.[2]

## I. BACKGROUND

The defendant entered into a collective bargaining agreement with the International Union of Bricklayers and Allied Craftsmen and, by extension, its affiliate local unions on October 12, 2010. Complaint ("Compl."), Exhibit ("Ex.") A (Labor Agreement Between the Signatory Masonry Contractors' Association of Arizona, Yoccabel Construction Company, and the Bricklayers and Allied Craftworkers Union Local No. 3 ("Labor Agreement")) at 36. The plaintiffs later filed this action pursuant to the Employee Retirement Income Security Act of 1974, as amended (the "ERISA"), 29 U.S.C. §§ 1001–1461 (2006), seeking to collect delinquent and unpaid contributions, interest on the delinquent and unpaid contributions, and liquidated damages owed to the International Pension Fund and International Health Fund resulting from the defendant's violation of the parties' collective bargaining agreement, as well as attorney's fees. Compl. at 6–7. Specifically, the plaintiffs alleged that the defendant "failed to submit the full amount of required contributions for certain covered work it performed [from] April 2011 through March 2012." Id. ¶ 10. They further alleged that the "total known contributions due the International Pension Fund and International Health Fund by Yoccabel for covered work [from] April 2011 through March 2012 . . . amount[ed] to $5,886.00," plus "interest in the amount of $430.34," and liquidated damages in two forms: $1,161.20 for "delinquent contributions," and "$1,187.57 assessed on contributions paid to the International Health Fund after the Due Date for

---

[2] In considering the motion, the Court relied solely upon the plaintiffs' motion and complaint. The defendant has submitted nothing to the Court to date.

2

covered work performed during . . . July 2011 and August 2011." Id. at 6. Thus, the plaintiffs' complaint requested relief for "the total amount of $9,015.11." Id.

The defendant neither entered an appearance nor answered the plaintiffs' complaint, and thus the Clerk of this Court entered a default against the defendant on November 9, 2012. See ECF No. 7. The plaintiffs subsequently moved for entry of default judgment. See Pls.' Mot. at 1. In their motion, the plaintiffs represented that the defendant "entered into a series of discussions in an attempt to settle the case" that concluded with the defendant claiming it "would keep to a payment schedule so long as [the plaintiffs] did not default the company."[3] Id. at 1–2. The plaintiffs represented further that the defendant made one payment in August 2012, but "then the payments stopped." Id. at 2. In the intervening time between the filing of the complaint and the plaintiffs' motion, the defendant "became further delinquent in its payments, and, as a result, the International Pension Fund had to re-calculate the extent of [the defendant's] delinquency," which has resulted in the plaintiffs seeking a default judgment "in the amount of $20,332.88," rather than the $9,015.11 sought in the complaint. See id. at 2–3; Compl. at 6. The defendant has not challenged the entry of the default or opposed the plaintiffs' motion.

## II. STANDARD OF REVIEW

When a defendant fails to defend against a case or otherwise engages in dilatory tactics, the plaintiff may invoke the court's power to enter a default judgment by first seeking the entry of a default. See Fed. R. Civ. P. 55(a); Peak v. Dist. of Columbia, 236 F.R.D. 13, 15 (D.D.C. 2006) (citing Keegel v. Key W. & Caribbean Trading Co., 627 F.2d 372, 375 n.5 (D.C. Cir. 1980)); see also Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980) ("The default judgment

---

[3] The plaintiffs allege that the defendant was served with both a summons and a copy of the complaint on July 2, 2012. Pls.' Mot. at 1.

must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." (citation and quotation marks omitted)). The Federal Rules of Civil Procedure provide for the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for a party seeking a default judgment: entry of a default, followed by entry of a default judgment. See id.; Jackson, 636 F.2d at 835; see also 10A Charles Alan Wright et al., Federal Practice & Procedure § 2682 (3d ed. 2008) (stating that, before "obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)"). Thus, when a defendant has failed to respond to pleadings or otherwise defend against an action, the plaintiff may request that the clerk of the court enter a default against that defendant. Fed. R. Civ. P. 55(a). Once the clerk enters the default pursuant to Rule 55(a), Rule 55(b) authorizes either the clerk or the court to enter a default judgment against the defendant. Id. 55(b).

Despite a plaintiff's ability to acquire a judgment by default, there are "strong policies favoring the resolution of genuine disputes on their merits." Jackson, 636 F.2d at 835; see Peak, 236 F.R.D. at 15 (acknowledging the inherent unfairness of awarding judgment against a party for mere filing delays). However, while courts do not favor default judgment and will only resolve cases in this manner "when the adversary process has been halted because of an essentially unresponsive party[,] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." Teamsters Local 639-Emp'rs Health Trust v. Boiler & Furnace Cleaners, Inc., 571 F. Supp. 2d 101, 107 (D.D.C. 2008) (citing Peak, 236 F.R.D. at 15; Jackson, 636 F.2d at 836).

4

## III. LEGAL ANALYSIS

### A. Whether Default is Warranted

The plaintiffs contend that they are entitled to a default judgment because the defendant "has failed to answer the Complaint, default has been entered by the Clerk, and [the] [p]laintiffs are entitled to judgment." Pls.' Mot. at 2. As the plaintiffs correctly note, no response has been filed by the defendant even though notice of the case as well as notice of the filing of the motion for a default judgment have been provided to the defendant. Id. at 2, 4.

Whether the entry of a default judgment is appropriate is committed to the sound discretion of this Court. Jackson, 636 F.2d at 836. To warrant a default judgment, the defendant must be considered a "totally unresponsive" party whose failure to "respond to the summons and complaint, the entry of a default, and the motion for a default judgment" demonstrates plainly willful behavior. Teamsters Local 639, 571 F. Supp. 2d at 107 (citing, among others, Jackson, 636 F.2d at 836). Given the "absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense," and especially in light of the plaintiffs' uncontested allegation that the defendant entered into settlement discussions, the Court finds that entry of a default judgment is appropriate in this case. See id.

### B. Monetary Relief

Although a default judgment establishes a defendant's liability, the Court must "make an independent determination of the sum to be awarded" pursuant to the judgment "unless the amount of damages is certain." Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing SEC v. Mgmt. Dynamics, Inc., 515 F.3d 801, 814 (2d Cir. 1975)). The ERISA directs the Court to award plaintiffs:

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
 (i) interest on the unpaid contributions, or
 (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and
(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); see also Compl., Ex. A (Labor Agreement), art. XIX, ¶ A.6 (providing for similar relief). In determining the amount a plaintiff is entitled to recover, the Court "may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." Flynn v. Mastro Masonry Contractors, 237 F. Supp. 2d 66, 69 (D.D.C. 2002) (citing United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979)). The unpaid contributions, interest, and liquidated damages are considered "sums certain," because their calculations are mandated by ERISA and party agreements.[4] Id. at 70.

Here, as proof of the award to which they are entitled if the Court grants their motion for a default judgment, the plaintiffs filed with their motion the declaration of David F. Stupar, who is both the Executive Director of the International Pension Fund as well as an authorized representative to effect collections on behalf of the International Health Fund. Pls.' Mot. at 3 & Ex. A (Declaration of David F. Stupar in Support of Plaintiffs' Motion for Default Judgment ("Stupar Decl.")) ¶¶ 1, 9–17. Mr. Stupar's declaration asserts claims of $9,460.14 in unpaid

---

[4] Attorney's fees, on the other hand, are not "sums certain" because the reasonableness of fees requested "is a judgment call which only the court can make." Flynn, 237 F. Supp. 2d at 70 (citation and internal quotation marks omitted). The Court addresses the plaintiffs' request for attorney's fees later in this opinion.

contributions,[5] $810.08 in interest, $1,705.16 in liquidated damages, and court costs of $530.00, for a total of $12,505.38 before attorney's fees. See id. ¶¶ 9–15. However, as noted above, these amounts differ significantly from those set forth in the plaintiffs' complaint, which asserts claims for $5,886.00 in unpaid contributions,[6] $430.34 in interest, $2,348.77 in total liquidated damages,[7] and filing costs of $350.00, which totaled $9,015.11 before attorney's fees. Compl. at 6.

In considering the appropriate amount of damages, the Court is constrained by the Federal Rules of Civil Procedure. Where a defendant entirely fails to defend against an action, Rule 54(c) specifically limits damages to the amount pleaded in the complaint. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The District of Columbia Circuit has not addressed this aspect of Rule 54(c). However, other Circuits have ruled that "the relief available on default [should] be such as is

---

[5] The $9,460.14 alleged in the plaintiffs' motion comprises "$4,786.74 for work performed during the months of April 2011 through March 2012," and "4,673.40 in estimated contributions for covered work performed during the months of April 2012 through November 2012." Pls.' Mot., Ex. A (Stupar Decl.) ¶¶ 9, 11.

[6] The $5,886.00 originally sought comprised the "known contributions due . . . during the time period of April 2011 through March 2012." Compl. ¶ 11. For that same time period, the plaintiffs allege in their motion that the amount due is $4,786.74. Pls.' Mot., Ex. A (Stupar Decl.) ¶ 9. The Court assumes that this reduction is a result of the defendant making "one payment [to the plaintiffs] on or about August 18, 2012" following settlement discussions. Pls.' Mot. at 2.

[7] Oddly, the plaintiffs' claim for liquidated damages in their motion is less than that requested in their complaint. The complaint alluded to two types of liquidated damages: one "calculated at the rate of 20 percent of the delinquent contributions," and the other "calculated at the rate of 20 percent on contributions paid to the International Health Fund after the Due Date for covered work performed during the months of July 2011 and August 2011." Compl. ¶¶ 12, 14. In other words, roughly half of the liquidated damages outlined in the complaint arose from late contributions, while the other half arose from contributions that the defendant never made at all. See id. In the plaintiffs' motion, however, their original claim for liquidated damages based on late contributions seems to have disappeared. While the amount of liquidated damages derived from unpaid contributions has increased to $1,705.16, there is no mention of late contributions at either the level alleged in the complaint or a revised level. See Pls.' Mot., Ex. A (Stupar Decl.) ¶¶ 12–13. However, because the plaintiffs represent in their motion that they "re-calculate[d] the extent of [the defendant's] delinquency" after the complaint was filed and after settlement talks occurred, Pls.' Mot at 2, the Court treats the amount in the plaintiffs' motion and in the Stupar Declaration as the amount ultimately sought by the plaintiffs.

7

within the fair scope of the allegations of the complaint and, when money judgment is sought, the specific amount demanded." Compton v. Alton Steamship Co., 608 F.2d 96, 104 n.16 (4th Cir. 1979) (internal quotations omitted); see also Slige v. Merz, 510 F.3d 157, 159, 160 (2d Cir. 2007) (holding that the district court did not err by entering a default judgment "only for the amount sought in the complaint" and refusing to include an award for prejudgment interest, where the plaintiff's complaint did not specifically request prejudgment interest). And, as Chief Judge Chasanow of the District of Maryland explained, Rule 54(c) operates to protect defendants who choose to default:

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award . . . . If defendant chooses not to proceed, liability cannot be increased. This principle seems applicable whether or not defendant appears at the damage hearing and therefore should not turn on when the default occurs.

Trustees of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Sheehe, No. DKC 11-0365, 2011 WL 5034830, at *3 (D. Md. Oct. 21, 2011) (citation omitted); see also 10 Charles Alan Wright et al., Federal Practice and Procedure § 2663 (3d ed. 2005).

As noted above, contributions, interest, and liquidated damages are "sums certain." Flynn, 237 F. Supp. 2d at 70. But even if those amounts were not considered "sums certain," other courts have held that, "[i]n general, a district court has discretion to award ERISA damages that accrue during the pendency of an action." Ames v. Stat Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. 2005) (citing Locher v. Unum Life Ins. Co., 389 F.3d 288, 297–98 (2d Cir. 2004); see also Finkel v. Triple A. Grp., Inc., 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010) ("Rule

8

54(c) is not violated, however, when a court awards damages that accrued during the pendency of the litigation if the complaint put defendant on notice that plaintiff might seek such damages."); cf. Jones v. Lockhart, Morris, & Montgomery, Inc., No. 1:11-CV-373, 2012 WL 1580636, at *1 (E.D. Tex. 2012) (adopting report and recommendation that recommended awarding prejudgment and postjudgment interest where the plaintiff sought such interest in the complaint). Although Rule 54(c) provides that a default judgment must be of the same type and amount as that sought in the complaint, neither Rule 54 nor Rule 55 requires that the amount sought in the complaint be a sum certain. Instead, courts have discretion to determine the appropriate sum of damages, so long as the amount is "within the fair scope of the allegations of the complaint." Compton, 608 F.2d at 104 n.16

As in Finkel, 708 F. Supp. 2d at 282, the defendant here was on notice not only of a specific amount of damages sought, but also that the plaintiffs sought contributions, interest, and damages that accrued after the complaint was filed. Compl. at 7. Specifically, the complaint requests "other relief as this Court deems appropriate, including judgment for any contributions and interest thereon that may accrue, and/or be found due and owing, subsequent to the filing of this Complaint." Id. Because the defendant was made aware that the plaintiffs sought an award in excess of the amount specifically calculated in the complaint, the Court finds it appropriate to award damages in accordance with the amount outlined in the plaintiffs' motion. See Pls.' Mot., Ex. A (Stupar Decl.) ¶¶ 9–15 (calculating and describing amounts due under applicable portions of § 1132(g)(2)). Thus, the Court grants the plaintiffs' motion for a default judgment as to the amount of contributions, interest, and liquidated damages due to them under the ERISA.

## C. Attorney's Fees

The plaintiffs have also requested attorney's fees and costs pursuant to § 1132(g)(2)(D) and have filed the declaration of the plaintiffs' counsel, Charles V. Mehler III of the law firm Dickstein Shapiro LLP, in support of these requests. Pls.' Mot., Ex. B (Declaration of Charles V. Mehler III in Support of Plaintiffs' Motion for Default Judgment ("Mehler Decl.")) ¶¶ 1, 17. Mr. Mehler's declaration represents that the plaintiffs' counsel has accrued $7,827.50 in legal fees, and costs of $350.00 for the filing fee and $180.00 to effect service of process. Id. ¶¶ 3, 17.

Courts are obliged to exercise discretion in awarding attorney's fees when cases are resolved by default judgments. See Flynn, 237 F. Supp. 2d at 70. In deciding the appropriate amount of attorney's fees to be awarded in this case, the Court finds instructive Eddy v. Colonial Life Insurance Co. of America, 59 F.3d 201 (D.C. Cir. 1995), a case in which the Circuit endorsed the approach to ERISA attorney's fee awards outlined in Hummell v. S.E. Rykoff & Co., 634 F.2d 446 (9th Cir. 1980). See Eddy, 59 F.3d at 207. The Hummell Court directs courts to consider the following factors:

> (1) the losing party's culpability or bad faith; (2) the losing party's ability to satisfy a fee award; (3) the deterrent effect of such an award; (4) the value of the victory to plan participants and beneficiaries, and the significance of the legal issue involved; and (5) the relative merits of the parties' positions.

Eddy, 59 F.3d at 206 (quoting Grand Union Co. v. Food Emp'rs Labor Relations Ass'n, 808 F.2d 66, 72 (D.C. Cir. 1987)). As to the first factor, the facts alleged in the complaint establish the defendant's culpability insofar as the defendant breached its duty to make certain ERISA contributions in accordance with the collective bargaining agreement into which it entered with the plaintiffs. Compl. ¶¶ 6–9. And as to the second factor, the defendant's willingness to engage in settlement talks with the plaintiffs in order to avoid default, see Pls.' Mot at 1–2, indicates that

the defendant is not entirely without the means to satisfy any award ordered by this Court. The third factor weighs heavily in favor of ordering fees in accordance with the plaintiffs' request, especially in light of the defendant's persistent nonpayment. The importance of "vindicating [the] ERISA's purpose is not diminished when relatively small amounts of money are at stake." Eddy, 59 F.3d at 207. Just as in Eddy, "deterring the continuing injury that results when an [employer] persists in its denial of ERISA rights is critical here." Id. at 208. Further, the fourth factor weighs in favor of granting attorney's fees because the plaintiffs' victory will "benefit[] other plan beneficiaries by providing a clear statement of the law." Id. at 209. In particular, this Court's decision makes clear to the defendant that it and other similarly situated entities can in certain circumstances be liable through a default judgment for ERISA contributions, interest, and damages that accrue after a complaint is filed. Finally, the defendant has conceded the merits of the plaintiffs' position by failing to appear or defend against this action, and so the fifth factor also weighs in favor of awarding attorney's fees.

Mr. Mehler's declaration indicates that "[t]he fees incurred in this action" were "calculated according to the normal billing rates for Dickstein Shapiro," plaintiffs' counsel in this case. Pls.' Mot., Ex. B (Mehler Decl.) ¶ 17. Additionally, the plaintiffs point to several other cases within this Circuit in which their counsel was awarded fees based on similar rates, id., Ex. B (Mehler Decl.) ¶ 12, including one case before this Court, Flynn v. Brayman Hollow Masonry, Inc., Civ. No. 09-0348 (D.D.C. Apr. 13, 2011) (Walton, J.). Accordingly, and upon review of the fees outlined in the Mehler declaration, the Court finds that the fees sought are reasonable and that the plaintiffs are entitled to attorney's fees and costs totaling $8,357.50.

### D. Equitable Relief

In addition to damages and attorney's fees, § 1132(g)(2)(E) provides that courts may award plaintiffs equitable relief as appropriate. Here, the plaintiffs request that the "defendant be directed to comply with its obligations to submit all required reports and to make all contributions due and owing." Compl. at 7. Although the complaint does not explicitly request an injunction, the moving party "is entitled to all reasonable inferences from the evidence offered," so the Court construes this request as one for an injunction. See Flynn, 237 F. Supp. 2d at 69 (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). Injunctive relief is appropriate when "the defendant has demonstrated no willingness to comply with either its contractual or statutory obligations or to participate in the judicial process . . . ." Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC, 498 F. Supp. 2d 237, 242 (D.D.C. 2007) (citation omitted). Because "the plaintiffs' request reiterates what is already the defendant's contractual obligations," and because of the defendant's persistent breach of its obligations under the collective bargaining agreement, the Court concludes that awarding injunctive relief is appropriate and grants the plaintiffs' such relief by requiring the defendant to comply with its obligation to make timely contributions in compliance with the terms of the parties' collective bargaining agreement. See Teamsters Local 639, 571 F. Supp. 2d at 108.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant the plaintiffs' motion for entry of default judgment in the amount of $20,332.88, specifically $9,460.14 in unpaid contributions; $810.08 in interest; $1,705.16 in liquidated damages; court costs of $530.00; and $7,827.50 in attorney's fees, and will order the defendant to pay forthwith the total amount of the judgment awarded to the plaintiffs, to submit the reports required under the collective bargaining agreement, and to

make all future contributions in a timely manner consistent with the terms of the parties' collective bargaining agreement.

      **SO ORDERED** this 28th day of August, 2013.[8]

REGGIE B. WALTON<br>United States District Judge

---

[8] An Order consistent with this Court's Memorandum Opinion shall be contemporaneously entered herewith.